## MORAND BROS., Inc., v. CHIPPEWA SPRINGS CORPORATION.*

(Circuit Court of Appeals, Seventh Circuit. July 16, 1924. Rehearing Denied November 6, 1924.)

No. 3383.

1. **Trade-marks and trade-names and unfair competition ⊚=33—Trade-mark generally not subject of conveyance apart from business or product.**

Generally, a trade-mark, in and of itself, and apart from any business or product to which it is appurtenant, is not a subject of conveyance.

2. **Good will ⊚=6(1)—Conveyance of good will generally includes trade-names and trademarks.**

Generally, conveyance of good will of business, in connection with business itself, carries with it trade-names under which business is carried on and trade-marks whereby its product is known.

*Certiorari denied 45 S. Ct. 229, 69 L. Ed. —.

3. **Trade-marks and trade-names and unfair competition ⊚=40 — Exclusive agents who purchased distributor's established business in certain territory held not entitled to use of trade-mark after expiration of contract.**

Contract, whereby distributor of spring water sold established business in certain territory, and granted to buyers the exclusive agency in such territory for a certain period, required buyers to cease using distributor's trade-mark on expiration of such period, though contract did not specifically so provide.

4. **Trade-marks and trade-names and unfair competition ⊚=40—Use of emblem containing picture of Indian maiden by spring, adopted by exclusive agent in certain territory, could be used by both agent and principal after expiration of contract.**

Where distributor of "Chippewa" spring water sold its established business in certain territory, and gave buyers exclusive right to sell its product in such territory for certain period, and where buyers in distribution of the water in such territory used label showing picture of Indian maiden sitting at spring or waterfall, and the distributor, with buyers' consent, during period of contract, used such picture in its advertisements, both distributor and buyers, in distribution of other water following expiration of contract, could use emblem, though buyers could not use trade-name, "Chippewa," therewith; pictures of Indian maidens being employed in a wide variety in trade, and there being nothing in the figure to suggest the name, "Chippewa," or springs bearing such name.

5. **Trade-marks and trade-names and unfair competition ⊚=98—Accounting period in allowing damages for use of trade-mark in certain territory should date from time when owner entered such territory.**

Where distributor of spring water sold its established business in certain territory, and gave buyers exclusive right to distribute water therein for certain period. and the buyers, after expiration of such period, continued, without distributor's consent, to use trade-name, without any effort on part of distributor to enter such territory, the accounting period, in allowing distributor damages for infringement of trade-mark, should date from time when distributor entered the market in such territory as buyers' competitor.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit by the Chippewa Springs Corporation against Morand Bros., Inc. Decree for plaintiff, and defendant appeals. Decree affirmed in part, and cause remanded, with instructions for modification of decree.

The appeal is from a decree finding infringement of appellee's trade-mark, and awarding an injunction and an accounting for profits. Appellee corporation, or its predecessors, owned a spring at Chippewa Falls, Wis., called Chippewa Springs, the waters whereof are claimed on good authority to be excellent for beverage purposes, and for many years the water has been sold in bottles, in bulk and in form of carbonized beverages such as ginger ale, sarsaparilla, etc., from the bottling works at Chippewa

Falls. For some time prior to 1904 it had established a distributing plant at Chicago, and was shipping the water here in bulk in tank cars for distribution in Chicago and suburbs. The Chicago business did not thrive as expected, and under date of February 1, 1904, it entered into a contract with appellants, Morand Bros., of Chicago, to take over the distribution of the water in and about Chicago; the written contract providing: (1) That for five years from its date the corporation appoints the Morands exclusive distributors of Chippewa Springs water in Chicago and suburbs; (2) that it sells to Morands its equipment of horses, wagons, storage tanks, and leasehold and other property it owned in connection with its business in Chicago at cost price; (3) agrees to furnish Morands Chippewa natural spring water at 2 cents a gallon in tank cars; (4) Morands to receive and pay for not less than 16,000 gallons monthly for each month during contract; (5) it will not during life of contract sell or distribute Chippewa Springs or other natural water in Chicago and suburbs, and transfers to Morands its "good will of said business and its trade now established thereon"; (6) Morands will assume the business and pay for the property, and purchase and distribute Chippewa Springs water in accordance with terms of contract; and (7) vigorously prosecute the sale of the water, and use every means to enlarge sale in Chicago and vicinity, and during period of contract will not deal in any other natural spring water, bulk or bottled; (8) they agree to carry on the business in the name of Chippewa Springs Company as distributors, and give company free inspection of equipment and methods for handling the water, and furnish list of their customers; (10) option to Morands to renew contract for additional five years.

The name, "Chippewa," was used in connection with sale of this water, but the name was not registered by owners of spring as a trade-mark until some years after expiration of contract. The company distributed some of its beverage products through Morands, and all its products, whether sold by itself or by Morands, were put out under the name of Chippewa, with statement upon labels and bottles referring to Chippewa Springs as the source of the water. Several years before the contract, terminated Morands began to make and distribute ginger ale and like beverages, using this water, and labeled it "Chippewa," "Made with the Waters of Chippewa Springs." At or shortly before the expiration of the contract they

had designed and used a label which contained, beside the name of Chippewa, the figure of an Indian maiden sitting at a spring or waterfall. The company used the same figure in its advertisements, but not on its labels.

There was no renewal of the contract at its termination, but it seems that occasionally thereafter Morands would order cars of water, which the company supplied, but in quantities far less than those called for by contract, the last of which there is evidence being in 1914, in the first eight months of which year about 16,000 gallons all told were shipped to Morands. But they continued to manufacture beverages and to use labels thereon employing the word, "Chippewa," and on many, if not all, of them, the picture of the Indian maiden, though omitting reference to the Chippewa Springs. But, instead of using the Chippewa Springs water, they then employed Lake Michigan water in the making of the beverages.

The court found infringement by appellant both in the use of the word, "Chippewa," and of the figure of the Indian maiden in the sale of all the beverage products of Morands into which the water from the Chippewa Springs did not enter from expiration of the contract, and decreed that appellant be enjoined from making further use thereof, and from representing thus or otherwise that its products are made from Chippewa Springs water of appellee, and that appellant account to appellee for all profits derived after August 15, 1914, from appellant's infringement of appellee's trade-mark and their unfair trading, and in addition pay damages sustained by reason thereof, referring same to master for accounting.

George A. Chritton, of Chicago, Ill., for appellant.

A. C. Paul, of Minneapolis, Minn., and Edward S. Rogers, of Chicago, Ill., for appellee.

Before ALSCHULER, EVAN A. EVANS, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge (after stating the facts as above). [1-3] It is contended for appellant that under that part of the contract which conveyed absolutely the storage and bottling plant at Chicago, and with it the good will of the business there, any trade-mark of the goods would pass as an incident to the conveyance of the business. It is true generally that a trade-mark in and of itself, and apart from any business or product to which it is appurtenant, is not a subject of conveyance, and

that the conveyance of good will of a business in connection with the business itself will carry with it trade-names under which said business is carried on, and marks whereby its product is known. The business which appellant here purchased was that of distributing this water in Chicago and suburbs for a limited time. The good will it acquired was the going business, which appellee had established, of selling this water in this limited territory, and appellant purchased for about $1,500, all tanks, horses, wagons, and leasehold for carrying on the business. If paid for at a price in excess of their then value, it would indicate the premium Morands were willing to pay for the advantage of having this business for the limited time fixed in the contract. While the contract does not specify that at the end of that time appellant should cease using appellee's tradename, under which it was selling its water from its spring of the same name, such we regard is a necessary inference from the contract itself.

We are satisfied that the court correctly found appellee entitled to the trade-mark or trade-name, "Chippewa," for waters and beverages, and that under all the circumstances it was proper to award an injunction restraining appellant from further employing that name in any such connection.

[4] Respecting the figure of the Indian maiden, however, we do not find that a proper conclusion was reached. Pictures of usually impossible Indian maidens are employed in wide variety in trade as well as in the arts, and, if, when appellant became the contractual distributors of the Chippewa waters, they undertook to increase the trade by depicting an Indian maiden in proximity to a spring or waterfall, about to quench her thirst, they were clearly within their rights, and might then and thereafter employ this emblem, notwithstanding that appellee, without objection by appellant, also used the device on some of its advertising matter. We find nothing in this figure that suggests the name, "Chippewa," or the springs bearing that name.

Appellant's counterclaim against appellee for the use by appellee of this same Indian maiden in its advertisements of Chippewa water is not well founded. The evidence is conflicting as to when the figure was designed, but the court was warranted in finding that the use was with Morands' knowledge and consent before and long after the contract expired, and did not err in denying appellant's counterclaim for use by appellee of the Indian maiden in its advertisements.

[5] Appellant contends that in any event the decree is erroneous in fixing the accounting period. After February 1, 1909, when the contract expired, the company was at liberty itself to enter the Chicago field. Morands continued to buy water, and to manufacture and sell beverages made from it, and under the Chippewa label, until August, 1914. Thereafter Morands ceased entirely buying the water, but continued using the name on its beverages manufactured from other water. To meet the persuasive contention of laches in permitting the Morands unopposed to continue the use of this name over 12 years after the expiration of the contract, and nearly 7 years after its last purchase of water and the time of beginning suit, it is urged that early in 1913 the company which had made the contract sold its property and good will and trade-names to appellee, a Minnesota corporation, in the management of which entirely new persons were interested, who did not learn of this use of the name by appellant until 1919, until which time appellee made no attempt to enter the Chicago field, and had no occasion to ascertain what appellant was doing. It appears that in January, 1913, a letter was written to Morands calling attention to the change and to finding in the files the expired contract with privilege of renewal, and inquiring whether the water then being taken by Morands was in pursuance of a contract. To this they replied, saying that they had permission to purchase the water on same terms as expired contract without binding themselves in any way.

Appellee, after acquiring the springs, for reasons best known to itself, completely abandoned the Chicago market, and deliberately kept out of it for at least 6 years. Appellant's conduct respecting the use of this trade-name in this field is not suggested as having remotely influenced appellee's course in this respect. Its very defense of ignorance of what appellant was doing raises the conclusion that it deliberately and of its own volition refrained from entering the Chicago field. Indeed, its officers testified that when, about 1919, they decided to compete for Chicago trade in water and in beverages, they were at once confronted by the obstacle of appellant's use of the name, "Chippewa," a fact which would have become apparent at any time during this period, had they sought to enter the territory. If it be assumed, therefore, that during all this time appellee was so little interested in the Chicago territory that it did not know of appellant's operations there, it could hardly

be said that it sustained any damage there for that time; and, if during all that time they did not learn that appellant's conduct at Chicago injuriously affected its trade, or the reputation of its water and product, in any territory outside of Chicago, it cannot be said that appellant damaged them in this respect during that time.

But when, early in 1919, appellee entered the Chicago market, a different situation arose. It became a competitor in a market theretofore intentionally avoided by it, and thereby sustained damage through the use of the trade-name by appellant. The record does not disclose just when this entry was, but the first definite date is March 12, 1919, when they shipped a carload of water to Chicago, and we believe that under the very unusual circumstances here presented it would be more equitable as between these parties if the accounting begin at that time.

The decree should be affirmed in all things, save in the matters pointed out, and as to these it should be modified as follows: The injunction should not extend to the use by appellant of the picture of the Indian maiden when not used in any way in connection with the name, "Chippewa." The accounting period should begin March 12, 1919, instead of August 15, 1914, as in the decree provided. For the purpose of entering a decree modified in accordance with the views above stated the cause is remanded to the District Court. Each party shall pay one-half the costs of the appeal.