## LAWRENCE–WILLIAMS CO. v. SOCIÉTÉ ENFANTS GOMBAULT ET CIE.*

Circuit Court of Appeals, Sixth Circuit.
November 17, 1927.

No. 4862.

1. Trade-marks and trade-names and unfair competition ⬤⟾30—Sale of remedy in United States by foreign manufacturer, through agent, under trade-name, held to give him exclusive right to such name.

The French manufacturer, by a secret formula, of a caustic balsam liniment, who through agents sold the remedy in the United States under the trade-name "Gombault's Caustic Balsam," *held* to have established a market which entitled him to exclusive use of the name in this country as that of his product.

2. Trade-marks and trade-names and unfair competition ⬤⟾31—Use of trade-mark by grantee of exclusive selling right gave it no right, after termination of contract, to use it on different product.

Where complainant, French manufacturer of a veterinary liniment, after establishing, through an agent, a market for the remedy in the United States, where it was sold under a trade-name, by contract granted the exclusive right to sell in the United States and Canada to defendant, requiring use of the trade-name and other identifying marks, under which contract and renewals defendant continued for more than 30 years, it had no right, after termination of the contract, to use the trade-name, nor complainant's trade-mark, on a different product, nor did it have that right because it had registered the trade-mark in the United States, and such use was an infringement of the trade-name of complainant, and also constituted unfair competition.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Suit in equity by the Société Enfants Gombault et Cie against the Lawrence-Williams Company. Decree for complainant, and defendant appeals. Affirmed.

A. A. Stearns, of Cleveland, Ohio (Stearns, Chamberlain & Royon, Fay, Oberlin & Fay, and John F. Oberlin, all of Cleveland, Ohio, on the brief), for appellant.

Lanier McKee, of New York City, and James R. Garfield, of Cleveland, Ohio (Hervey, Barber & McKee, of New York City, Garfield, McGregor & Baldwin, of Cleveland, Ohio, Arthur Wm. Barber, of New York City, and Arthur D. Baldwin, of Cleveland, Ohio, on the brief), for appellee.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

MOORMAN, Circuit Judge. The subject of this litigation is a trade-mark consisting of the words "Gombault's Caustic Balsam," with the picture of a farm scene, with a jockey mounted on a race horse and holding in his hand a bottle. It is used in selling a liniment for horses and other stock. The bill as amended asserted infringement of this trade-mark and unfair competition, with a prayer for an injunction and accounting. The answer denied infringement and unfair trade competition, claimed the same trade-mark, alleged infringement thereof by plaintiff, and sought an injunction and accounting. The decree adjudged ownership in plaintiff, infringement and unfair trade and competition by defendant, and enjoined defendant and its officers and agents from using the words "Gombault's Caustic Balsam," or the signature "J. Gombault," or "J. E. Gombault," in advertising or selling any preparation or product not of plaintiff's manufacture, and from otherwise unfairly competing with plaintiff, by representing or causing it to be believed that any preparation manufactured and sold by defendant was the Gombault's Caustic Balsam manufactured by plaintiff. The plaintiff was enjoined under the prayer of the cross-bill from selling or offering to sell its product inclosed in any carton so similar to two of defendant's cartons offered in evidence as to confuse or deceive the purchasing public, and from using in the sale of its product a leaflet which defendant had theretofore used. No appeal was taken from the decree against plaintiff.

The plaintiff's liniment is made according to a secret formula discovered in 1868 by J. E. Gombault, a veterinary surgeon of the French army. The defendant, a corporation organized under the laws of Ohio, is the successor in interest to M. J. Lawrence, who in 1880 made a contract with Gombault, the son of the first maker of the liniment, for the exclusive right to introduce and sell his liniment in the United States and Canada. New contracts were made in 1899 and 1913, with immaterial modifications of the terms of the first. Each of them was limited to a term. In 1925 the contract of 1913 was canceled by mutual agreement. Since that time defendant has been making and selling a preparation, under the same trade-marks and labels that it used on the Gombault preparation.

Prior to the agreement of 1880 Gombault had introduced his liniment into the United States and Canada through an agent, Dingreville, who established himself in this country and visited many cities, introducing and selling the remedy. He operated under the name

of A. Dingreville & Co., distributed samples, and advertised and sold the remedy as "Gombault's Caustic Balsam." In May of 1880 his firm, composed of Dingreville and S. A. Schwab, sold to Lawrence, for a consideration of $600, about 65 gallons of "Gombault's Caustic Balsam," some 200 filled bottles of the balsam, the good will, books, accounts, letters, and contracts of the firm, together with "all the rights, benefits, and privileges belonging to the said firm of A. Dingreville & Co. in the business of the introduction and exclusive sale of the said Gombault's Caustic Balsam in the United States and Canada."

Shortly thereafter Lawrence went to France and contracted with Gombault for the exclusive right to introduce and sell his liniment in the United States and Canada. The terms of the contract are set forth in a letter from Gombault to Lawrence of June 19, 1880. There is no formal acceptance of this letter in the record, but the conduct of the parties thereafter, with the later contracts and references therein to the first contract, shows, we think, that the letter contained the exact terms of the agreement. It purported to confirm conditions "verbally agreed upon" the day before by the writer and Dingreville, representing Lawrence; and it granted to Lawrence the exclusive right or agency (which is in dispute, depending upon the correct translation of the French words "dépôt" and "dépositaire") to sell in the United States and Canada the veterinary preparation invented by Eugene Gombault, the father of the writer, the preparation being known as "Gombault's Caustic Balsam." The agreement was to run for 10 years, and Lawrence bound himself to buy every year a minimum of 1,000 liters of the preparation. In case of his death, his heirs or representatives were not required to continue the exploitation of the remedy, and would not be held liable for damages; but, if his heirs should wish to continue the contract, Gombault would be held bound by its terms and conditions. In case of Gombault's death before the expiration of the contract, his heirs or representatives would not be forced to continue the contract, but they would not be permitted to give the agency or right of sale to any one else.

Lawrence was authorized to carry on his labels, circulars, and printed matter the title of "sole proprietor for the U. S. A., Ontario, and Canada, without giving him the right to avail himself of this title against M. Gombault, who only grants it as a courtesy to render the placement easier." Gombault was

forbidden to ship under any presentation caustic balsam into the United States or Canada, but was not to be held responsible for importations of the product of which he had no knowledge, and he agreed that he would do all in his power to prevent shipments being made from France to America in competition with Lawrence. The labels and pamphlets were to present the preparation as "J. E. Gombault's Caustic Balsam, Ex-Veterinary Surgeon to the French Government Studs," a designation similar to the French legend "Baume Caustique de J. E. Gombault, Ex-Veterinaire des Haras de France," under which the liniment had been marketed in France for many years. The stopper was to "bear the signature of J. E. Gombault," and it was provided that at the expiration of the contract Lawrence should have the right to renew it for another period of 10 years, upon giving a stipulated notice, in which event it should go on for another such term, unless Gombault was not physically able to make the preparation, in which case the agency or right of sale should not be given to another.

The contract of August 11, 1899, which refers to the former contract as made June 21, 1880, was made with Mme. Gombault, who conceded to the defendant, Lawrence-Williams Company, the successor of Lawrence, the exclusive right of sale of the preparation in the United States and Canada. That company agreed to sell the liniment under the name "J. E. Gombault's Caustic Balsam," and that the capsules of the bottles, the labels, and prospectus should bear the signature of "J. Gombault." The contract recited that Eugene and Mme. Gombault consented to a form of bottle and label for use in the United States and Canada, that the former contract had been carried out to the satisfaction of both parties, and that the instant contract was to be on the "same friendly terms and conditions." The third contract entered into September 1, 1913, and after Mme. Gombault's death, contained terms and conditions similar to those under which the parties had theretofore operated. The authority granted to Lawrence in the first contract to advertise himself as the "sole proprietor" was omitted, however, from the second and third agreements.

[1] It is not important, we think, whether the three contracts be treated as one or as unrelated, or whether the words "dépôt" and "dépositaire," used in the first, are the equivalent in English of agency or exclusive selling rights. Before entering into the first contract, the plaintiff had been selling its liniment in this country under the name

"Gombault's Caustic Balsam." The defendant contends, under Le Blume Import Co. v. Coty (C. C. A.) 293 F. 344, and Graff v. Cook, 55 App. D. C. 136, 2 F.(2d) 938, that the product had not at that time become identified with the name upon the markets of the country. In the first of these cases the importations were too casual, "infrequent, and inconsequential" to obtain a market; the other was decided on a question of estoppel, and is clearly not in point. We think the status of plaintiff's business when the first contract was made was such as entitled it to the exclusive use of the name in the selling of a caustic balsam liniment. Morand Bros. v. Chippewa Springs Corporation (C. C. A.) 2 F.(2d) 237; Société Anonyme du Filtre v. Pasteur Chamberland Co., 8 Trade-Mark Reporter, 298; Saxlehner v. Eisner & Mendelson Co., 179 U. S. 19, 21 S. Ct. 7, 45 L. Ed. 60.

[2] Nor was there an assignment or abandonment of the name as in Bourjois v. Katzel, 260 U. S. 689, 43 S. Ct. 244, 67 L. Ed. 464, 26 A. L. R. 567, and Fisk & Co. v. Fisk Teachers' Agency (C. C. A.) 3 F.(2d) 7. Contrarily there was, we think, a definite understanding between the plaintiff and the defendant that the name should belong to the plaintiff. It is true that defendant bought and paid for all the liniment that it received. It did so, however, under contracts requiring that the product be identified with its maker. The defendant was intrusted, to some extent, at least, with maintaining that identity. This it did in much of its advertising. In May of 1881 it published, over the signature of Gombault, a statement that he was the sole "proprietor and preparer of the remedy," and that he had constituted "them [defendant] as sole and exclusive agents" for "Gombault's Caustic Balsam" for the United States and Canada. Some time prior to 1889 it advertised the remedy under the jockey design, to be referred to later, as "prepared by J. E. Gombault, Ex-Veterinary Surgeon to the French Studs"; and as late as 1896 in a circular advertisement it was stated that "every drop of Caustic Balsam is prepared in France and imported in strict purity direct from Mr. Gombault, the sole proprietor." In all of its advertisements defendant associated the liniment with the name "Gombault," advertising it as "Gombault's Caustic Balsam," prepared by "Gombault, Ex-Veterinary Surgeon of the French Government Studs," itself for a time as the sole agent of this liniment, as the sole importer, and as the sole proprietors and distributors of the "great French veterinary remedy," always displaying the name Gombault conspicuously in its advertisements, and on its labels, and in such relation to the other words as to indicate the origin of the remedy. It thus appears to have been the purpose of the defendant to preserve the identity of the name with plaintiff's product. This was successfully done, presumably to defendant's advantage; and even though it has built up its business solely upon the Gombault name, it cannot, in view of the understanding referred to, assert ownership thereof as against plaintiff.

The label that defendant is using has a background with a panel showing a mounted jockey holding a bottle in his hand in the direction of a lame or sick horse standing behind him. It is called the jockey design. Defendant registered this design, with the words "Gombault" above and "Caustic Balsam" below, in the United States in 1905. It was registered by plaintiff in France in 1882. The only difference between the two is that the latter has as a background buildings of the Norman type of architecture, whereas defendant's design has the American farm building type. Some of the designs used in this country before 1905 had the Norman type. Plaintiff also registered another trade-mark in France, in 1882, referred to in the record as the prancing horse design.

It is claimed by the defendant that the jockey design was designed by Lawrence, and was never used in France, either before or after the contract of 1880. The record shows that shortly after that contract was made Lawrence began to complain of competition from importations of the liniment into the United States and Canada. As a means of stopping those importations it was agreed between Lawrence and Gombault that the product as sold in Great Britain and France should be sold under such labels and marks that, if imported into this country or Canada, it would appear to be a different product from that which the defendant was selling. The trial court found from the evidence, and we think the finding correct, that to effectuate this agreement the prancing horse design was adopted by Gombault for use in Great Britain and France, and that that design was then registered in France, but that prior to that time Gombault had used the jockey design. The court further found that, even if the two colloborated in developing the jockey design, their object was to distinguish plaintiff's product in the markets of the United States and Canada from its product as sold elsewhere, and that the label was not a superadded mark which

identified the defendant as the seller, but was intended to and did attach to the product to the same extent as the agreed markings on the cap and neck of the bottle. We see no escape from that conclusion.

Defendant is not helped by the fact, if it be a fact, that the liniment which it is now making is in every essential respect similar to the Gombault remedy. Jacobs v. Beecham, 221 U. S. 263, 31 S. Ct. 555, 55 L. Ed. 729. It was understood, we think, between the parties, that the trade label and name used by defendant in marketing the liniment should be the property of the plaintiff and identify its product. It would therefore be unfair, not only to the plaintiff, but to the public, to permit the use of that label and name upon another product, however meritorious it might be. Defendant, as said by the court below, has the right to make and sell a liniment identical with the Gombault liniment, if it has not fraudulently obtained the Gombault formula, and it may also sell a caustic balsam as a liniment; but it may not sell such a liniment under a name or label which implies or represents that it is the product of plaintiff.

Nor do the proofs sustain the contention that plaintiff consented to defendant's registration in 1905 of the jockey design, with the words "Gombault's Caustic Balsam." Whether it had the right to register those marks belonging to plaintiff for the purpose of protecting its exclusive selling right in the United States we do not determine. To establish an adverse claim based on such registration, it was incumbent upon defendant to show by clear and convincing evidence that the plaintiff knew of the existence and purpose of the act. This was not done. The earlier labels, showing that the trade-mark was registered, without showing where, and before it was registered in this country, naturally might have been thought by plaintiff to refer to the registry in France. It does not appear that the words later added, "U. S. Patent Office," were ever brought to the attention of plaintiff. The defendant offered plaintiff more than $100,000 for its formula in 1923. It now contends that the formula was well known long before that time. We think it was not, but, if it was, it is difficult to understand the offer as relating to any other subject than the right to use the trademarks that had theretofore been used in connection with plaintiff's product. We have no doubt that defendant had not, up until that time, considered that it was entitled to the use of those marks.

The judgment is affirmed.