**PEOPLE OF THE VIRGIN ISLANDS et al.**
**v. W. A. TAYLOR & CO.**

United States District Court
S. D. New York.

May 3, 1951.

H. Graham Morison, Asst. Atty. Gen., Irving H. Saypol, U. S. Atty., New York City, Irwin W. Silverman, Chief Counsel, Division of Territories and Island Possessions, Department of Interior, Washington, D. C., for plaintiffs People of the Virgin Island and Virgin Islands Corp., Harry I. Rand, Washington, D. C., of counsel.

Rogers, Hoge & Hills, New York City, for defendant James F. Hoge, Lenore B. Stoughton, Andrew J. Graham, Morris Henry Frank, New York City, of counsel.

CONGER, District Judge.

Motion by defendant (1) to dismiss the suit pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, 28 U.S.C.A., as to plaintiff, The People of the Virgin Islands; or in the alternative (2) to drop said plaintiff for misjoinder in that said plaintiff is not the real party in interest; and (3) to dismiss the suit pursuant to Rule 12(b)(6) of the Federal Rules as to the plaintiff, the Virgin Islands Corporation.

A very brief statement of the nature of the action as gathered from the complaint I think would be helpful. The complaint is rather voluminous and contains many facts which are interesting historically, but which are not relevant to the issues here.

The controversy arises out of a dispute over a trade-mark and trade-name.

The Virgin Islands Corporation (Vicorp) was organized by Act of Congress on June 30, 1949. 48 U.S.C.A. § 1407 et seq. It was the successor of Virgin Islands Company (Vico) which had been organized under the laws of the Virgin Islands. The objects and purposes of both corporations were to aid in effecting the economic rehabilitation of the Islands and to promote the general welfare of the People of the Virgin Islands. By the above Act of Congress, Vicorp succeeded to the assets and liabilities of Vico.

As one of its activities Vico, in the Spring of 1935, commenced the production of rum in two distilleries in the Virgin Islands. By the early part of 1936 it had distilled a considerable quantity of this rum and was in the market to dispose of it. In order to create a market in the United States it entered into a contract with defendant on October 8, 1936, appointing defendant its "sole agent and distributor to market and sell this rum in the United States." Said contract was later amended and continued until March 30, 1945 when it terminated.

The complaint is silent as to the reason for the failure to renew the contract. There is no allegation in the complaint that either party in any way failed to carry out its terms. Efforts to negotiate a new agreement were unsuccessful and then Vico entered into a new contract with the Munson G. Shaw Company.

When the original contract was entered into no name or brand or label had been

decided upon for this rum, and according to the complaint it was decided "that a suitable name would be originated by defendant in view of its superior knowledge of and experience in the field of distributing rum and other liquors".

The name finally arrived at was "Government House". It was printed on a label in connection with a picture of a white house, blue waters and a white sailboat.

On March 24, 1937 defendant applied to the U. S. Patent Office for registration of the trade-mark "Government House". This was granted on July 6, 1937.

On June 4, 1937, defendant made a similar application to register the "Government House" picture. This was granted on October 5, 1937.

In the complaint there is an account of how the trade-mark and picture were originated, but while most interesting, it seems not to be relevant because of the terms of the contract between the parties. At any rate from 1937 down to the termination of the contract (except for a time during the War) the rum was bottled by Vico and labelled with this label, sold by Vico to defendant and resold by it in the United States. Since July, 1945 the same procedure has continued except that now the rum is being sold by the Shaw Company with the same name, picture and label.

As I read this complaint, plaintiff Vicorp has brought this action to get back the title to this name, mark or label on the ground that it is the legal and beneficial owner thereof.

Some of the relief asked for herein is for an order that "defendant assign to Vicorp as equitable owner thereof the Trade-Mark Registrations".

I have studied the complaint with great care but I can find no facts stated therein upon which that claim may be founded.

The complaint asserts (Par. 6) the contract provided "that the 'brand and trademarks shall be the property' of defendant and 'may be registered by it in its name', subject to the right of Vico to acquire the trade marks *under specified circumstances*". (Italics mine.)

The complaint is barren as to what these *specified circumstances* may be. I can only conclude that plaintiff does not claim that it acquired any rights to the trade-mark by reason of anything it did pursuant to these *specified circumstances*.

As I see it from the complaint, defendant, pursuant to the contract, registered the trade-marks in its own name and they became its property and from aught that appears in the complaint are *still* its property.

There is only the merest suggestion of ownership of the trade-mark in the plaintiff to be found in the complaint. It is to be found in Paragraph 22 of the complaint, where it is alleged that: "The 'Government House' name, picture, label and trade-marks are in law and in equity the property of Vicorp, as successor to Vico. The registration of the aforesaid trademarks in the name of defendant was in fact and in law registration to an agent and trustee of Vico."

The above are nothing more than conclusions. There is not the slightest factual support for such conclusions. On the contrary, as I have stated before, the contract between the parties provided otherwise. The parties here practically started this business together. One was the producer and the other was the distributor. Each had a good will. When their relationship ceased the parties could, as they did here, determine who was to be the owner of the trade-mark; nor did it make any difference whose brainchild the trademarks were. The contract could and did determine the ownership of the trademarks. E. F. Prichard Co. v. Consumers Brewing Co., 6 Cir., 1943, 136 F.2d 512, certiorari denied 321 U.S. 763, 64 S.Ct. 486, 88 L.Ed. 1060. The contract is not attacked in any way. There is no allegation that the contract as written does not express the actual agreement, nor a prayer that because of mutual mistake it should be reformed. The complaint fails to allege any basis for recission or reformation; nor is any demanded.

The complaint fails to plead any facts (whether by contract, express or implied,

understanding, custom, operation of law or otherwise) supporting the allegation that the defendant acquired the trade-marks as agent and trustee.

Vico and Vicorp were and are very closely allied to the Government and while they were and are each separate entities they were part of the Government's program to rehabilitate the people of the Virgin Islands. Still, that does not give them any special treatment here. Even were the Government directly concerned here, the contract would have to be construed and the rights of the parties determined by the application of the same principles as if the contract were between individuals. Reading Steel Casting Co. v. United States, 268 U.S. 186, 45 S.Ct. 469, 69 L.Ed. 907.

■ Plaintiffs contend that the intention of the parties to a contract is to be gathered not from a single sentence, but from the whole instrument read in the light of the circumstances existing at the time of the negotiations leading up to its execution. Unfortunately, plaintiff did not make the whole contract a part of the complaint, but that part of the contract which is referred to in the complaint in clear and unequivocal language makes the defendant the owner of the trade-marks. If the specific language of the contract as to ownership of the trade-marks is to be varied by special circumstances, such special circumstances should be pleaded. There are no facts pleaded which would indicate that the meaning of that part of the contract is in doubt or is ambiguous. Plaintiff asserts that the usual custom between the manufacturer and distributor is for the manufacturer to own the trade-marks when the contract expires. This may very well be true, but unfortunately for plaintiff the contract here explicitly states otherwise.

Plaintiff says "The failure of agency or distributorship contracts to speak plainly as to the rights of the parties to the trade-name once the fiduciary relationship ends has not deterred the courts from directing their restoration to the producers, especially when the consumer deception would otherwise follow". Morand Bros. v. Chippewa Springs Corp., 7 Cir., 1924, 2 F.2d 237,

certiorari denied 267 U.S. 592, 45 S.Ct. 229, 69 L.Ed. 803.

The above argument has no application here since the contract does not fail "to speak plainly as to the rights of the parties to the trade name" but on the contrary in no uncertain terms, in language which is not ambiguous, does so speak in placing the ownership in defendant.

■ Plaintiff also advances the argument that Vico did not have the right to dispose of this trade-mark; that only Congress could do so, Article IV, Section 3, Clause 2 of the Constitution. I see no merit in this argument. Nowhere in the complaint is there any averment that the United States owned or used the trade-marks. In fact, the claim is that Vico owned them. Vico was a separate corporate entity with full power by its Charter to carry on business and "to enter into, make and perform contracts of every kind and description with any person, firm * * *."

The United States is not a party herein and there is nothing in the complaint to indicate that these plaintiffs are authorized to institute action for and on the behalf of the United States.

Plaintiffs further contend that even without title to the trade-marks and name they set forth in a complaint a cause of action of unfair competition and trade-mark infringement.

Plaintiffs set forth in their brief the essential elements of an action for unfair competition as follows:

1. The right of the plaintiff whether by prior use or otherwise to trade-names or marks.

2. Defendant's wrongful use or threatened use of them.

3. The damage or threatened damage to plaintiffs. In addition, they assert in an action for trade-mark infringement, there is necessary a right and title to the technical trade-mark involved.

As a matter of fact, these so-called essential elements are common to both actions for trade-mark infringement and actions for unfair competition. Hanover Star

Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713.

Paragraph 25 of the complaint sums up plaintiffs' contention on this branch of the case. I quote: "Continued use by defendant of said trade-marks, name, picture or label on any product other than rum produced in the Virgin Islands by or under the auspices of the Government will deceive and mislead the consuming public, constitute unfair competition, and damage the rights and interests of plaintiffs."

As the Supreme Court said in the Hanover Star Milling case "The essence of the wrong consists in the sale of the goods of one manufacturer or vendor for those of another". 240 U.S. at page 412, 36 S.Ct. at page 360.

■ In this respect I believe that plaintiffs' complaint is fatally defective. There is no allegation that defendant is doing anything or is threatening to do anything with these trade-marks and name which might be construed as a wrongful use thereof. There is nothing in the complaint to indicate that defendant is doing anything with the trade-marks and name except to hold on to them and claim them as its own, except that from Paragraph 21 one gets the information that defendant may still have a limited amount of Vico rum left. There is no claim in the complaint, however, that this possession is unlawful or that defendant does not have the right to sell this rum with the registered trade-marks. There is no allegation in the complaint that defendant sells any other rum under the name "Government House".

True, Paragraph 19 does contain an allegation that on July 16, 1945 and November 22, 1946 the Federal Alcohol Tax Unit did deny an application of "defendant's affiliate" for a certificate of label approval for use of the "Government House" name on a Puerto Rican rum produced outside of the Virgin Islands. That was, however, in 1945 and 1946. This action was not commenced until July, 1950. What defendant has been doing with label "Government House" in the meantime may not be ascertained from the complaint. In Yale Electric Corporation v. Robertson, 2 Cir., 1928, 26 F.2d 972, 973, Judge Learned Hand of the U. S. Court of Appeals for this Circuit very aptly said: "The law of unfair trade comes down very nearly to this—as judges have repeated again and again—that one merchant shall not divert customers from another by representing what he sells as emanating from the second. This has been, and perhaps even more now is, the whole Law and the Prophets on the subject, though it assumes many guises."

Plaintiff's complaint is barren of any factual averments sufficient to make a case under the above rule. I am convinced that the real issue in this case is not of trademark infringement or unfair competition, but the title to and the right to use the registered trade-marks and name "Government House".

In view of this disposition it is unnecessary to consider the defendant's objection with respect to the misjoinder. But I think I should go into this issue. If there is an appeal it would be better for both questions to go together to the appellate court.

■ I cannot see any legal justification for the inclusion herein the people of the Virgin Islands as a party plaintiff. I can see perhaps as "window dressing" it might be of some advantage, but legally the people of the Virgin Islands just do not belong here as a party. The people seek no relief. They were not a party to the contract. They do not claim to own the trade-mark here in dispute. The complaint contains no allegation asserting a right in the people and a violation of that right by defendant. Vicorp has broad corporate powers. It is a legal entity, a "body corporate" and has an existence entirely apart from the United States of America or the people of the Virgin Islands. This is a business controversy over registered trade-marks. The people of the Virgin Islands have no part in it. True, they are interested in the result. Vicorp was created to promote the general welfare of the *inhabitants* of the Virgin Islands through the economic development of the Virgin Islands. That does not entitle the political entity "The People of the Virgin Islands" to become a party plaintiff in a business dispute over the ownership of registered

trade-marks which it does not claim to own.

It appears from the face of the complaint that the people of the Virgin Islands is not a real party in interest and has stated no claim upon which relief can be granted in its favor.

Therefore, the motions to dismiss for failure to state a claim as well as for misjoinder are granted as to the people of the Virgin Islands. The motion to dismiss as to the Virgin Islands Corporation is granted with leave to file an amended complaint within 20 days after the service on it of the order upon this decision with notice of entry.