ADAMS BAKING CO. *v.* INTERSTATE BAKERIES CORPORATION.

[Cite as Adams Baking Co. v. Interstate Bakeries Corp. (1972), 37 Ohio Misc. 79.]

(No. 52467—Decided March 31, 1972.)

Court of Common Pleas of Scioto County.

*Mr. Chester P. Fitch,* for plaintiff.
*Mr. C. Clayton Johnson,* for defendant.

MARSHALL, J. The source of this action is a written agreement bearing the date of July 22, 1921, between Schulze Baking Company, a Chicago, Illinois corporation, party of the first part, and A. W. Adams Wholesale Bakery, party of the second part, which was a sole proprietorship.

The agreement, in its pertinent parts, provides that, in consideration of the sum of $1,200.00, the party of the first part grants to the party of the second part:

"the exclusive license for ninety-nine (99) years to manufacture within the corporate limits of Portsmouth, Ohio and to use as a trade name or trade mark for advertising and identification purposes the registered trade mark, number ........ for Butter-Nut Bread, granted to said Schulze Baking Company on .......... by the U. S. Patent Office, and to attach to said bread, labels similar to the label affixed hereto as a sample. This license is granted for the above named consideration and only upon the following express conditions, all of which are hereby agreed to and accepted by the parties hereto:

"First: The said Schulze Baking Company will disclose to party of second part a certain formula for said Butter-Nut Bread, and agrees not to disclose same to any other baker or bakers in this City of Portsmouth, Ohio,

"Second: The said A. W. Adams will not disclose the Butter-Nut Bread formula, or any part thereof, to any person whomsoever except to those journeymen bakers within his own employ to whom it is necessary to disclose it for the purpose of manufacturing under this license, nor assign or transfer in any manner any of the rights herein granted by the Schulze Baking Company save only to a successor to whom the licensee shall have sold or assigned his entire business and in such case the person to whom the business is transferred shall notify the Schulze Baking Company of said transfer in writing within six (6) months, otherwise this license to be void and of no effect.

"Third: In case of the failure of the said A. W. Adams Wholesale Bakery to make any of the payments hereinabove required to be made or to comply with any of the conditions of this instrument, the said Schulze Baking Company shall have the right immediately to revoke and terminate this license without prior notice and without returning any of the consideration herein provided to be paid by the licensee, and upon receipt of notice from the Schulze Baking Company that it has, for any of the above specified causes, terminated the license hereby granted, the party of the scend part hereby agrees that it will immediately cease to manufacture or market, under the name Butter-Nut, either bread or other bakery products."

Plaintiff, Adams Baking Co., Inc., is a corporation organized under the laws of Ohio on March 18, 1926. It is not disputed that the A. W. Adams referred to in the agreement, for a time after the execution of the same, engaged in the bakery business with George H. Adams and W. A. Adams under the name of Adams Brothers Baking Co., as a partnership, until the plaintiff corporation was organized; and that the plaintiff has continuously, purportedly by authority of said agreement, engaged in the production, sale and distribution of Butter-Nut bread both in the city of Portsmouth and in other portions of Ohio and areas in the state of Kentucky. Defendant, Interstate Bakeries Corporation, a corporation organized under the laws of the state of Illinois, having its principal place of business in Chicago, has

changed its name to Interstate Brands Corporation, and is the successor of the Schulze Baking Company. Defendant admits that it and its predecessors have been distributing and selling bread and bakery products using the name and label "Butternut" or "Butter-Nut" within the city of Portsmouth for many years, and generally in Ohio and Kentucky continuously prior and subsequent to the granting of the license.

Plaintiff in its amended petition contends that it has the exclusive right to the use of said trade name within the city of Portsmouth and demands that the defendant be enjoined from infringing thereon and seeks an accounting. Defendant contends that since it was not given a notice in writing of the assignment of the license rights to the successors of the Adams Wholesale Bakery, plaintiff has lost all rights under the agreement, and that because it has engaged in the activities complained of for many years, the plaintiff is barred by laches and estopped from the relief requested. In its counterclaim, defendant says that plaintiff has not been using the "Butter-Nut" formula in its bread production, which constitutes a breach of the agreement giving defendant the right to terminate; that by reason thereof, it has the xclusive right to the use of the trade mark "Butter-Nut" or "Butternut"; and demands that the plaintiff be enjoined from infringing thereon, and seeks an order terminating the agreement, an accounting, damages in the amount of $100,000.00, costs and attorney fees. Plaintiff in its reply states that it has been engaged in the activities complained of for approximately 50 years, and alleges that if the defendant ever had a cause of action, which plaintiff denies, its claims are barred by laches and the statute of limitations.

Thereafter, plaintiff moved for a summary judgment and a declaration of the rights and obligations created by the agreement. Defendant opposes this on the ground "that substantial issues exist as to the material facts of this cause."

In ruling upon this motion the court is governed by the provision of Civ. R. 56, and must consider the pleadings,

answers to interrogatories, written admissions and memoranda prepared by counsel.

The court finds that the plaintiff succeeded to the licensed activities in 1926 and has engaged in those activities continuously to the present time. The defendant, having acquiesced in those activities and having made no protest as to the lack of a formal notice of the assignment for some 44 years, is now estopped to assert such a defense. Defendant's contention that it is entitled to terminate the agreement by reason of the failure of the plaintiff to use the prescribed formula is not well taken. In addition to the elements of laches and estoppel as previously noted, the agreement contains no requirement that the formula referred to therein must be used in the manufacture of the bread.

" 'Trademark' means any word, name, symbol, or device or any combination thereof adopted and used by a person to identify goods made or sold by him, and to distinguish them from goods made or sold by others." R. C. 1329.54(A). Trademark rights are based on the common law. Registration statutes, both federal and state, simply implement common law rights and provide additional remedies. 52 Ohio Jurisprudence 2d 365. "The adoption and use of a trademark involves two rights: (1) the exclusive right to use a particular mark, and to be protected in that use from competition with others who attempt to use it; and (2) the right to protection from unfair competition and to protect the public from imposition and deception." *Id.*, at page 347. The right to a trademark is derived from its use in connection with particular goods, which right is not enlarged upon by its mere registration. It does not relate to or affect processes of manufacture or chemical combinations. *Trade-Mark Cases* (1879), 100 U. S. 82. The general rule is that the right to the exclusive use of a trademark is limited to the geographical territory within which it has been established as such by actual use. Annotation, 36 A. L. R. 922. An acquired trademark in a name may be the subject of a licensee; but it must include the goodwill together with the right to produce or market the article which the mark has been used to designate. An attempted

assignment of a naked trade mark disconnected from any business or good will is void. "In the absence of any express provision on the subject, the general rule is that the vendor may not thereafter use any of the marks, labels, or other trade indicia so transferred, in competition with the vendee and to his detriment." 52 American Jurisprudence 530; *Lawrence-Williams Co.* v. *Societe Enfants Gombault Et Cie* (1927), 22 F. 2d 512; Title 15, Section 1060, U. S. Code; 87 Corpus Juris Secundum 500 *et seq.* "Laches, acquiescence or delay, under circumstances rendering it inequitable to grant an injunction, constitute a valid defense in suits to enjoin infringements or unfair competition." 87 Corpus Juris Secundum 523, Trademarks, Section 183. "Where the complainant's protracted inaction is with knowledge of the defendant's infringement, and the latter has acted in reliance on such inaction to an extent that he will suffer great loss should an injunction now be granted, complainant's conduct constitutes such laches or acquiescence as to be tantamount to estoppel or abandonment; in such instances, delay is a valid defense requiring a court of equity to deny injunctive relief." *Id.*, at page 524. *Seven-Up Co.* v. *O-So-Grape Co.* (1960), 283 F. 2d 103, cert. den., 365 U. S. 869. Even greater diligence is required in bringing a timely action where an accounting for profits is sought. 52 American Jurisprudence 633.

Parties to a written contract are bound by its terms. Where the terms of a contract are clear and unambiguous, they are to be applied in their plain, ordinary and popular sense. "A court is not privileged to make contracts for others, nor in any wise to change the conditions of contracts lawfully made, because of some personal notion of what in a particular case good morals and fair dealing may require." 11 Ohio Jurisprudence 2d 377, Contracts, Section 132. "In construing any written instrument, the primary and paramount question is: what was the intent or purpose of the makers of such written instrument?" *Id.*, at page 379, Section 134.

The foregoing, we believe, constitutes a fair statement of the law applicable to this case.

The court finds that:

1. By virtue of the license agreement, A. W. Adams Wholesale Bakery, obtained the exclusive right to manufacture bread using the formula for and the trademark of "Butter-Nut" bread; that said license necessarily implied the exclusive right to sell the same within the city of Portsmouth, Ohio; and that the plaintiff currently has the right to manufacture and sell the product within said city.

2. That there are material facts in dispute as to the following issues:

(a) Has the plaintiff acquired the right through usage to sell and distribute the product in certain areas of Ohio and Kentucky outside of the city of Portsmouth due to the laches and acquiescence of the defendant? If so, is this right exclusive or is it held in conjunction with a right of the defendant to engage in the same activities?

(b) Has the defendant acquired the right through usage to distribute and sell bakery products under the trade mark "Butter-Nut" or "Butternut" within the city of Portsmouth in competition with the plaintiff, due to the laches and acquiescence of the plaintiff?

3. That the plaintiff is not entitled to an injunction at this time.

4. That the defendant is not entitled to damages or attorney fees; and is not entitled to an injunction at this time.

5. That neither parety is entitled to an accounting.

It is ordered that this cause be scheduled for hearing for determination of the issues set forth in finding No. 2 above. All other issues shall be deemed established.