366 A. I. M. Per. Corp. *v.* Ferro. Corp., 139 Va. 366

Syllabus.

# Staunton.

## A. I. M. Percolating Corporation v. Ferrodine Chemical Corporation, et al.

### September 18, 1924.

1. Corporations—*Irregularities in Execution of Contracts—Acceptance of Benefits.*—Regardless of any irregularities in the manner of executing a contract, the corporation is bound by the contract, where it appeared that the directors of the corporation had knowledge of the existence of the contract, and accepted for the corporation the benefits accruing to it thereunder, and made no denial thereof, but treated it as a valid and binding contract, and the stockholders of the corporation never repudiated the contract but on the contrary adopted a report of the president informing the stockholders of the contract.

2. Corporations—*De Facto Directors—Election—Mistake in Number of Shares Represented.*—Where through a mistake in addition the number of shares present at a stockholders meeting was insufficient, directors elected at such meeting who from the time of their election, transacted or controlled the transaction of all business of the corporation, were *de facto* directors and the corporation and its receiver are estopped to deny their authority as such directors.

3. Corporations—*Officials and Agents—Scope of Authority—Contracts.*—Where the power to make a contract came within the scope of the general and apparent authority of the officers of a corporation, the other party to the contract had the right to assume that the officers were duly authorized to enter into the contract.

4. Corporations—*Officers and Agents—Authority of Officer.*—The authority of an officer of a corporation is the authority which his company holds him out to the public, and those dealing with it, as possessing.

5. Corporations—*Officers and Agents of Corporation—Fiduciary Relation of Officers.*—Officers and directors of a corporation occupy a fiduciary relation towards the corporation and cannot deal for the corporation with themselves or to their benefit unless with full knowledge on the part of the corporation.

6. Corporations—*Officers and Agents of Corporation—Fiduciary Relation of Officers—Officer Interested in Another Corporation—Case at Bar.*—One acting only as agent for one corporation of which he was president, who had an account against another corporation for legal services

rendered in the preparation of deeds and the organization of the corporation, is not disqualified from executing as agent of the first corporation a contract with the second corporation.

7. Corporations—*Contracts—Acceptance of Benefits.*—Where a corporation accepts the benefits of a contract, it is held by so doing to have ratified the contract and waived any formalities in its execution. In other words, any informality in executing a contract is waived and cannot be set up as a defense where the corporation has accepted and retained the benefits of the contract.

8. Trade-Marks and Trade Names—*Application to Another Article.*— Where a trade-mark and a trade name had been used and applied exclusively to one product, the property of its owner, and had been registered by the owner under the registry laws of the United States, and the only persons who had made use of the trade-mark and trade name were the owner and persons claiming under him, one who had made use of the trade-mark and trade name under a contract with the assignee of the owner, which contract had terminated, had no claim to the trade-mark and trade name as he could only use the trade-mark in marketing a different article from the one always marketed thereunder, which it would not have the right to do.

9. Trade-Marks and Trade Names—*Application to a Particular Article.*— The exclusive right to use a trade-mark is acquired by its use and application to a particular article.

10. Trade-Marks and Trade Names—*License—Termination.*—The right to use a trade-mark may be licensed and the right to such use ceases when the license to the licensee terminates.

11. Trade-Marks and Trade Names—*Transfer of Product or Business— Transfer of Trade-Marks.*—A trade-mark or trade name may be sold when coupled with the transfer of some product or business with which it has been identified.

12. Trade-Marks and Trade Names—*Connection with Product.*—A trade-mark or name can only be used in connection with the sale of the identical article that has been sold under the trade name or trade-mark to the extent necessary to establish them as such.

13. Sales—*Measure of Damages—Profits.*—The measure of damages for the breach of a contract for sale of mineral water by the purchaser is the profits which the seller would have made if the purchaser had complied with the contract.

Appeal from a decree of Law and Chancery Court of the city of Roanoke. Decree for defendant. Petitioner appeals.

*Affirmed in part, reversed in part, and final decree.*

The opinion states the case.

*R. W. Kime, Paul C. Buford, Jr.,* and *Hall, Wing-field & Apperson,* for the appellant.

*Cocke & Hazlegrove,* for the appellees.

WEST, J., delivered the opinion of the court.

In the year 1903, J. N. Horne was the owner of certain lands in Newton county, Mississippi, upon which were located certain mineral beds, which, when subjected to a treatment known as leaching and percolating by water, yielded an amber-colored liquid known as acid iron mineral water.

On May 5, 1903, J. N. Horne registered in the patent office at Washington the trade-mark "A. I. M." and appropriated this trade-mark to designate acid iron mineral extracted from the mineral beds on his land. During that year and prior to August 26, 1903, J. H. Garst, of Roanoke county, Virginia, entered into an agreement with J. N. Horne, whereby Garst was to manage the production of acid iron mineral from the mineral beds. On August 26, 1903, Horne entered into a contract with A. P. Watkins and others, whereby Watkins and his associates, or a corporation by them or their assignees to be formed, acquired the exclusive privilege of selling the products manufactured from acid iron mineral, for a period of thirty years. Under the terms of this contract, Watkins and associates, or the corporation to be formed, were to place acid iron mineral water on the market, and they agreed to purchase annually from Horne a minimum quantity of seventy (70) barrels of twenty-five (25) gallons per barrel at the price of $1.36 per gallon. The contract further provided that if, after the expiration of three years from its date, Watkins and his associates should fail to order and pay for

seventy barrels per annum, Horne might, after three months' notice, declare the contract terminated.

Subsequently, Watkins and his associates, organized, under the laws of South Carolina, a corporation known as the Acid Iron Mineral Company, for conducting the business of placing on the market acid iron mineral products.

In the year 1911, there was organized a corporation known as the Acid Iron Mineral Company, Inc., of Virginia, to which Acid Iron Mineral Company of South Carolina transferred and conveyed all of its assets, business and good will, which transfer was subsequently ratified by J. N. Horne, by contract of December 18, 1913.

The Virginia corporation conducted the business until Ferrodine Chemical Corporation was chartered and organized under the laws of the State of Virginia, in 1917. On May 1, 1917, the last named corporation took from the Acid Iron Mineral Company, Inc., of Virginia, a transfer or assignment of all of its assets, accounts, contracts, rights and good will.

These contractual obligations thus assumed by Ferrodine Chemical Corporation required J. N. Horne to furnish, and Ferrodine Chemical Corporation to purchase, 100 barrels of mineral water per year; each barrel containing twenty-five gallons, at a price of $1.36 per gallon, for a period of ninety-nine years from December 18, 1913.

By deed of July 1, 1917, J. N. Horne and wife conveyed to A. I. M. Percolating Corporation the mineral interests in the tract of land from which the acid iron mineral was being extracted, together with the exclusive right to produce and sell acid iron mineral.

By reason of the contract of August 26, 1903, the transfer thereof and the conveyance above mentioned,

there became vested in the Ferrodine Chemical Corporation the exclusive right to place on the market for sale the medicinal products manufactured from acid iron mineral, and there became vested in A. I. M. Percolating Corporation the exclusive right to extract acid iron mineral from the mineral beds from which it was produced, and supply the same to the Ferrodine Chemical Corporation.

Prior to the time the Ferrodine Chemical Corporation acquired the right to place acid iron mineral products on the market, the original contract had been modified to the extent that the minimum quantity to be purchased and paid for annually had been increased from seventy barrels to 100 barrels, and the life of the contract had been extended from the original period of thirty years to a period of ninety-nine years.

By contract dated August 1, 1917, effective as of July 1, 1917, the A. I. M. Percolating Corporation and the Ferrodine Chemical Corporation agreed that the price to be paid for acid iron mineral should be reduced from $1.36 per gallon to $1.00 per gallon, and the minimum quantity to be purchased and paid for annually should be increased from 100 barrels to 500 barrels.

From July 1, 1917, to October 23, 1919, A. I. M. Percolating Corporation furnished to the Ferrodine Chemical Corporation 17,288 gallons of mineral water and was paid therefor in accordance with the contract of August 1, 1917, $1.00 per gallon. The difference in the price paid for this mineral water at $1.00 per gallon, instead of $1.36 per gallon, amounted to $6,223.68. The Ferrodine Chemical Corporation, for the period of from July 1, 1917, to March 10, 1921, failed to take the minimum quantity of 500 barrels per year, as required by the contract of August 1, 1917, by 28,762 gallons.

On October 23, 1919, Ferrodine Chemical Corpora-

A. I. M. Per. Corp. *v.* Ferro. Corp., 139 Va. 366. 371

Opinion.

tion ceased to purchase any acid iron mineral from the A. I. M. Percolating Corporation, and on March 10, 1921, the contract was terminated.

Other facts in the case will be referred to in the course of this opinion.

This original suit was instituted by W. S. Forbes, a stockholder of the Ferrodine Chemical Corporation, to have a receiver appointed for the corporation and its affairs and assets administered under the direction of the court.

A. I. M. Percolating Corporation filed its petition in this cause alleging that the Ferrodine Chemical Corporation was indebted to it for the damages sustained by it on account of the failure of Ferrodine Chemical Corporation to take the minimum quantity of water annually, as provided in the contract of August 1, 1917, and that such damages should be measured by the profit it would have made on the mineral water not taken; and, if the contract of August 1, 1917, for any cause, was not enforceable, that it was entitled to recover of Ferrodine Chemical Corporation the difference of thirty-six cents per gallon on the price of mineral water furnished since the contract of August 1, 1917, became effective, amounting to $6,223.68.

The Ferrodine Chemical Corporation and its receiver, without denying petitioner's right to terminate the contract for furnishing acid iron mineral water, claimed the trade-mark and trade name which had been identified with the sale of acid iron mineral products for about twenty years, and the right to use the trade-mark and trade name in connection with the sale of medicinal products not manufactured from acid iron mineral.

Upon the hearing the court decreed that the Ferrodine Chemical Corporation had forfeited its contract as sole agent for the sale and distribution of the products

of the mineral beds; that its license to use the trade-name "Acid Iron Mineral" and the trade-mark "A. I. M." which were incident to the product, was at an end; that the trade name and trade-mark belonged to the A. I. M. Percolating Corporation, and that the Chemical Corporation and its receiver have no right to use them; that the contract of August 1, 1917, was made and entered into by R. W. Kime as president of the Ferrodine Chemical Corporation, without corporate authority, while he was at the same time attorney for and interested in and acting for the other party thereto, the A. I. M. Percolating Corporation; that the contract is voidable at the instance of the Ferrodine Chemical Corporation and its receiver; and that A. I. M. Percolating Corporation does not, in legal contemplation, come with clean hands, and is not entitled to recover damages thereunder, or under either of the prior contracts.

The appellant relies on two assignments of error:

(1) The court erred in holding that the contract of August 1, 1917, between the Ferrodine Chemical Corporation and A. I. M. Percolating Corporation increasing the minimum quantity of acid iron mineral to be purchased annually from 100 barrels to 500 barrels, and reducing the price to be paid therefor from $1.36 per gallon to $1.00 per gallon, was not a valid and binding contract.

(2) The court erred in holding that if the contract of August 1, 1917, was not a valid and binding contract, the effect of the attempt to enter into that contract was to deprive the Percolating Corporation of the right to recover the difference in the price of acid iron mineral water as fixed by preexisting contracts under which the water was being furnished, and the price fixed by the contract of August 1, 1917.

· It clearly appears from the evidence that the contract of August 1, 1917, was negotiated by R. W. Kime, president, and W. H. Gillispie, the general manager, of the Ferrodine Chemical Corporation, on the one part, and J. H. Garst, president of the A. I. M. Percolating Corporation, on the other part, and that Garst, representing the latter company, reluctantly entered into the contract on behalf of his company. It does not appear, as contended, that Kime in any way represented or acted for the A. I. M. Percolating Corporation in the transaction.

Garst testified that Kime was not a stockholder in the A. I. M. Percolating Corporation; that it was never determined what his interest therein should be; that Kime did not have anything to do with the management of A. I. M. Percolating Corporation. Kime testified that he had no connection with the A. I. M. Percolating Corporation, except that he represented Garst as attorney in connection with the organization of the corporation; that prior to August 1, 1917, he had no interest in the corporation except an account against it for legal services rendered; that *after the contract of August 1, 1917,* was entered into, he did ask Garst to allow him an interest in the corporation, but no agreement had ever been made as to just what his interest would be.

It is not expressly denied that the execution of the contract of August 1, 1917, was authorized by the board of directors of the Ferrodine Chemical Corporation, as testified to by Kime. But it is contended that C. D. Denit, another director, could not have attended a meeting of the board, on account of his physical condition at that time. The fact appears, however, that R. W. Kime, president, signed the contract for the corporation, and that C. D. Denit, secretary, affixed and

attested the corporate seal thereto on August 1, 1917. There was only one other director.

[1, 2] Regardless of any irregularities in the manner of executing the contract, it clearly appears that the directors of the corporation had knowledge of the existence of the contract, and accepted, for the corporation, the benefits accruing to it thereunder, and made no denial thereof, but treated it as a valid and binding contract until the receiver of the corporation filed his answer to the appellant's petition in this cause. Besides, the stockholders of the corporation have never repudiated the contract.

On the contrary, the report of the board of directors, made to the stockholders' meeting February 1, 1918, informed the stockholders that the president of the board had procured from the A. I. M. Percolating Corporation a contract fixing the price of the acid iron mineral water at $1.00 per gallon f. o. b. Hickory, Miss., instead of $1.36 per gallon. The president's report was unanimously adopted and ordered to be filed. It is true that the committee appointed to ascertain the number of shares of the stock represented in the meeting, in person and by proxy, made a mistake in the addition of the number of shares present. This is immaterial so far as concerns the question now under consideration. The contract, as stated, was entered into by the old board of directors, and the directors elected at this meeting were *de facto* directors, and from that time on transacted, or controlled the transactions of, all the business of the corporation, and the corporation, or its receiver, cannot now deny their authority as such directors. Besides, in 1920, negotiations took place between the Ferrodine Chemical Corporation and A. I. M. Percolating Corporation with respect to a new contract fixing the price and quantity of water to be purchased.

A. I. M. Per. Corp. *v.* Ferro. Corp., 139 Va. 366. 375

Opinion.

These negotiations were reported to the board of directors on August 10, 1920, and action was taken thereon. In the minutes of none of the meetings of the board of directors or stockholders do we find any evidence that the contract of August 1, 1917, was ever disavowed or repudiated.

[3] The power to make this contract came within the scope of the general and apparent authority of the officers of the Ferrodine Chemical Corporation, and Garst, acting for the A. I. M. Percolating Corporation, had a right to assume that the president, the secretary and the general manager of the Ferrodine Chemical Corporation were duly authorized to enter into the contract.

[4] The authority of an officer of a corporation is the authority which his company holds him out to the public, and those dealing with it, as possessing. *Mumford Banking Co.* v. *Bank*, 116 Va. 449, 82 S. E. 112.

It is not contended that the contract of August 1, 1917, was not a fair one to the Ferrodine Chemical Corporation. The appellee took more than forty-seven barrels of the water in the month of July, 1917, which is in excess of the annual minimum of 500 barrels.

[5, 6] It is true, as contended by appellee, and sustained by the authorities cited, that officers and directors of a corporation occupy a fiduciary relation towards the corporation and cannot deal for the corporation with themselves, or to their benefit, unless with full knowledge on the part of the corporation. But this doctrine has no application in the instant case, where Kime was acting only as agent for the Ferrodine Chemical Corporation, of which he was president, when his interest in the A. I. M. Corporation had never been determined, and consisted only of an account against the latter company for legal services rendered in the preparation of deeds and the organization of the corporation.

It sufficiently appears that the contract of August 1, 1917, was validly executed under due authority, but, if authority were lacking, the contract has been acknowledged as valid by the Ferrodine Chemical Corporation and the benefits thereunder accepted by that corporation.

[7] Where a corporation accepts the benefits of a contract, it is held by so doing to have ratified the contract and waived any formalities in its execution. In other words, any informality in executing a contract is waived and cannot be set up as a defense where the corporation has accepted and retained the benefits of the contract. *Altavista Cotton Mills* v. *Lane,* 133 Va. 1, 112 S. E. 637; 3 Fletcher Cyc. Corp., p. 2445.

The contract is valid and binding and the appellant is entitled to recover damages suffered by it for the breach thereof by appellee in failing to take, during the period the contract was in force, the minimum amount of water which it thereby agreed to take.

The appellee assigns as cross-error the action of the court in holding that, as between A. I. M. Percolating Corporation and the Ferrodine Chemical Corporation, the latter was a mere licensee as to the use of the trademark "A. I. M." in connection with the sale of bottled, medicinal, chalybeate, mineral water, which license had been terminated, and that said trade-mark belonged to the A. I. M. Percolating Corporation as assignee and grantee of J. N. Horne.

[8] It is not denied that J. N. Horne was the originator of the trade name and the trade-mark, and that he registered the trade-mark under the registry laws of the United States in 1903. It is certain that the trade-name and trade-mark have been used and applied exclusively to the product of the mineral beds formerly owned by J. N. Horne, now owned by appellant, for

over twenty years, and that the trade name and trademark have been used in connection with no other product. The only persons who have made use of the trademark and trade name are J. N. Horne and persons claiming under a license from him or his vendee, the appellant. All the rights of Ferrodine Chemical. Corporation under the various contracts referred to in this opinion, including the contract of August 1, 1917, have been terminated. The appellant is the owner of the mineral beds and the plants from which the acid iron mineral water is produced, and the appellee has no interest therein. It could, if its contention were sustained, only use the trade-mark in marketing a different article from the one always marketed thereunder, which it would not have the right to do.

As said by Mr. Justice Miller in *Trade-Mark Cases,* 100 U. S. 82, 25 L. Ed. 550, "the right (to a trade-mark) grows out of use, not mere adoption."

Mr. Justice Pitney, in *Hanover Star Milling Co.* v. *Metcalf,* 240 U. S. 412, 36 Sup. Ct. 357, 60 L. Ed. 713, states the law thus: "The redress that is accorded in trade-mark cases is based upon the party's right to be protected in the good will of a trade or business. * * * courts afford redress or relief upon the ground that a party has a valuable interest in the good will of his trade or business, and in the trade-mark adopted to maintain and extend it." '

[9] The exclusive right to use a trade-mark is acquired by its use and application to a particular article. 26 R. C. L., section 11, page 638. .

[10] The right to use a trade-mark may be licensed and the right to such use ceases when the license to the licensee terminates. 26 R. C. L., section 48, page 868.

[11] A trade-mark or trade name may be sold when coupled with the transfer of some product or business

with which it has been identified.    26 R. C. L., sections.
41, 42, pages 862, 864.

[12]  A trade-mark or name can only be used in con-
nection with the sale of the identical article that has
been sold under the trade name or trade-mark to the
extent .necessary to establish them as such.    Note, 1
L. R. A. (N. S.) 704.

Applying these principles of law to the facts in the
instant case, it is evident that the decision of the court
on this branch of the case should be affirmed.    The
opinion of the able and learned judge who heard the case
in the lower court, so clearly expresses our views on this
point that we hereby adopt it as a part of this opinion,
as follows:

"As to the trade-name 'Acid Iron Mineral' and the
trade-mark 'A. I. M.', the court is further of the opinion
that these are incident to the product; that the Ferro-
dine Chemical Corporation as the sole general agent for
the sale and distribution of the product of the mineral
beds, by virtue of the assignment to it of all prior con-
tract rights, had a right in the nature of a license to use
said trade name and said trade-mark in the sale and
distribution of the product, but as said Ferrodine Chem-
ical Corporation claims not to be bound by the con-
tract of August 1, 1917, filed with said petition as 'Ex-
hibit No. 4,' and has failed to comply with the contract
which it supplements, as all of said contracts are now
forfeited, the license is at an end, and said trade name
and mark are not to be treated as assets of the Ferro-
dine Chemical Corporation, but belong to petitioner as
assignee and grantee of J. N. Horne, the original owner
thereof."

[13]  It fairly appears from the evidence that A. I. M.
Percolating Corporation would have made a profit of at
least forty cents per gallon on each of the 28,762 gallons

of water which Ferrodine Chemical Corporation failed to take in pursuance of the contract of August 1, 1917. This is the measure of the damages sustained by the breach of that contract.

The decree complained of will be affirmed in so far as it holds that the trade name "Acid Iron Mineral" and the trade-mark "A. I. M." are incident to the product and are the property of A. I. M. Percolating Corporation, and that the license of the Ferrodine Chemical Corporation to use the same is at an end, and that they are not assets of said last named corporation. In all other respects the decree will be reversed.

The court proceeding to enter here such decree as the lower court should have entered as to the damages sustained by the appellant, will decree in favor of A. I. M. Percolating Corporation against Ferrodine Chemical Corporation for the sum of $11,504.80, and direct the receiver to pay the same, or the *pro rata* part thereof to which appellant may be entitled on a final distribution of the assets of the corporation.

*Affirmed in part, reversed in part, and final decree.*