**PROGRESSIVE WELDER COMPANY, a corporation and Progressive Welder Sales Company, a corporation, Plaintiffs,**

v.

**Merton P. COLLOM, individually and doing business as Progressive Welder Sales Company of Minnesota; and Progressive Welder Sales Company of Minnesota, Inc., a corporation, Defendants.**

**Civ. No. 4623.**

United States District Court
D. Minnesota, Fourth Division.

Oct. 20, 1954.

Neville, Hachey & Johnson, Minneapolis, Minn., for plaintiffs.

William F. Kelly, Excelsior, Minn., and Leroy Haglund, Wayzata, Minn., for defendants.

JOYCE, District Judge.

The plaintiffs in this action seek equitable relief upon their claim that the defendants wrongfully appropriated and wrongfully use the words "Progressive Welder" as part of their business names or designations. Jurisdiction is found in this court by reason of diversity of citizenship and the existence of the requisite amount in controversy.

Progressive Welder Company (hereafter referred to as the Welder Company) and Progressive Welder Sales Company (hereafter referred to as the Sales Company) were incorporated under their present names in 1935 and 1950 respectively under the laws of the State of Michigan. The Welder Company, since shortly after its incorporation, engaged in the manufacture and sale of welding equipment and supplies and over the course of years expanded its sales market to include the principal industrial states. It appears from the evidence that the Welder Company through extensive advertising and sales promotion obtained a position of recognized importance in the field particularly with respect to industrial or production type welding equipment and made sales directly or through its sales dealers in many states including Minnesota.

Commencing in the spring of 1947 the Welder Company adopted a policy of identifying its sales representative in each of the respective sales territories

as "Progressive Welder Sales Company of" to which title was added the name of the state in which the representative was located, and thereafter franchises or sales agreements negotiated with such representatives were executed by them under such name and style. The first such contract was executed in April 1947 and by September of 1948 seven additional contracts were in effect covering several sales territories. The number of such contracts had increased to nine by March 1, 1949 and to fifteen by September 1, 1949.

The adoption of such form of name on the part of the sales representatives was not the result of express written agreement or license but was made at the suggestion and with the consent of the Welder Company as an expression of its general sales policy.

The Sales Company was organized in 1950 for the purpose of functioning as the national sales distributor of the products of the Welder Company and from that time took over from the Welder Company the entire sales operation including advertising and sales promotion and of course dealt with the local representatives as principal.

In the spring of 1949 the defendant Collom entered into an arrangement with the Welder Company whereby he was given the right to sell the company's products in the State of Minnesota, and in portions of adjoining states. A formal franchise agreement was executed on May 9, 1949. In this initial contract and subsequent contracts Collom was described as "doing business as the Progressive Welder Sales Company of Minnesota", and in August of 1949 Collom filed notice of intention to adopt such business name under M.S.A. § 333.01. In September of 1950 when the time arrived for the execution of a new one year agreement the Sales Company, having taken over dealings with the local representatives, executed the same, in substitution for the Welder Company. When that agreement expired by its terms no further formal agreement was executed but Collom continued for some months to represent the Sales Company

upon an informal basis. In any event his authority to do so terminated not later than December 31, 1952, as Collom himself admitted in a letter, plaintiffs' exhibit No. 24.

Following this termination of the dealership arrangement Collom continued to do business as a distributor of other lines of welding equipment but still employed the name and style adopted in 1949. In June of 1953 Collom caused a Minnesota corporation to be organized under the same name, "Progressive Welder Sales Company of Minnesota, Inc.", and since that date both defendants have done business under the name although neither sells "Progressive Welder" products.

Collom and the defendant corporation have circulated advertising material in Minnesota and surrounding states under the defendant corporation's name and have distributed printed cards in the same area which in substance read as follows:

"Progressive Welder Sales Company of Minnesota, Inc.

\*     \*     \*     \*     \*     \*

In order to assist our customers we have expanded our Minneapolis facilities to include an engineering staff and a replacement parts service. Please address all correspondence to Progressive Welder Sales Company of Minnesota, Inc.

"Morton P. Collom, President."

The firm name as it appears on the card by reason of the type face and color of ink employed, is in apparent simulation of the letter head used by the plaintiff Sales Company, and neither Collom who testified on his own behalf nor any other witness offered any relevant or satisfactory explanation to dispel the inference that such simulation was intentional. Reference will be made later to the effect of the circulation of such cards.

The defendants claim that Collom obtained rights in the name by his use prior to the time the 1949 sales agreement was executed and produced several witnesses who testified that he employed the name prior to the date of that agreement, May 9, 1949, in his

dealings with the trade. Some of the witnesses were of the impression his use of the name commenced as early as February of 1949, but none was positive as to the exact date and their testimony is entirely consistent with the conclusion that Collom's first use of the name was at a time when he had already commenced negotiation with the Welder Company for a sales territory. It is not entirely clear when those negotiations were commenced, the testimony in that regard being somewhat confused. It is clear in any event they commenced some time prior to February 25, 1949 for on that date Mr. Plummer, sales manager for the Sales Company, wrote a letter to Collom, defendants' Exhibit "B", enclosing a blank form of franchise agreement. It is inconceivable that this letter represented the first contact of the parties. The court is convinced in accordance with the logic of the situation that Collom's first use of the name came after the commencement of negotiations. From the beginning his use was not in his own independent right but in connection with his representation of the plaintiffs or in anticipation thereof.

■■ Since the only ground of federal jurisdiction present in this case is diversity of citizenship it is clear that Minnesota law governs the plaintiffs' claim of unfair competition. Pecheur Lozenge Co., Inc., v. National Candy Co., Inc., 315 U.S. 666, 62 S.Ct. 853, 86 L.Ed. 1103. In this connection Howards Clothes, Inc., v. Howard Clothes Corp., 236 Minn. 291, 296–297, 52 N.W.2d 753, 755, contains the most recent and informative statement of Minnesota law on the subject of trade names. As indicated in that case the plaintiffs must establish three elements in order to prevail here.

"(a) That plaintiff's name has a special significance or secondary meaning in the trade;

"(b) That plaintiff has an exclusive right to, or a protectible interest in, the trade-name with reference to his goods, services, or business and with reference to the territorial or special group market in which his trade-name is used; and

"(c) That defendant has unfairly used plaintiff's trade-name, or a confusing simulation thereof (although not necessarily with a fraudulent intent), whereby the ordinary purchaser, to plaintiff's or the public's detriment, has been, or is reasonably likely to be, deceived as to the true identity of the goods, services, or business, and is misled into believing that he is getting plaintiff's product when he is in fact getting that of defendant."

Whether the present plaintiffs have succeeded in attaching to their name a secondary meaning connoting their business and the "Progressive Welder" products in which they deal, is an issue of fact upon which prior precedent is of little assistance. The factors which may be considered by the court on that question are illustrated by the cases collected in Note 150 A.L.R. 1067, 1082–1097.

■ In the present case plaintiffs have presented evidence tending to show that defendants' use of the name has created actual confusion in the minds of customers as to the connection between the plaintiffs' business and that of defendants. In addition there is opinion testimony, by witnesses familiar with the group market in which welding equipment is sold, to the effect that in such group market the words "Progressive Welder" do have a secondary meaning indicative of a certain line of welding equipment and of the plaintiffs as the source of that line of goods. Such testimony may be necessarily subject to the frailties of possible bias and inadequacy of sampling with reference to the entire group market in which the existence or non-existence of secondary meaning must be determined. See Premier-Pabst Corp. v. Elm City Brewing Co., D.C.D.Conn., 9 F.Supp. 754, 760. Yet when considered with the other factors present here (1) the use of the name by the Welder Company in connection with its business since its incorporation in 1935,

(2) the volume of business done by plaintiffs, the evidence indicating that on a volume basis the Sales Company is presently one of the four largest suppliers of such equipment in the country, and (3) the substantial sums expended by plaintiffs for advertising and other sales promotion of a nature calculated to impress upon the sales market an identification of the trade name with their particular line of goods, the court is of the opinion that plaintiffs have established the existence of the requisite secondary meaning.

It appears that the Welder Company since 1950 has sold its products only through its distributor, the Sales Company, and at present is not engaged in manufacturing although it retains its name and its corporate franchise. However, defendants do not seriously contend that it has abandoned its name or good will as such manufacturer and there being no evidence here to support such contention if it were made, other than the suspension of production, it remains qualified to assert its rights therein. See Note 3 A.L.R.2d 1226, 1244. The Sales Company on the other hand is not a manufacturer but obtains its requirements from other manufacturing suppliers and sells and distributes such products as "Progressive Welder" equipment. Since the goods supplied are made to its specification it also has standing to assert here its rights to the name and attendant good will. Cf. Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526.

The court is also of the opinion that plaintiffs' interest in the good will represented by the name and attendant connotations is in other respects protectible as against these defendants. The defendants' claim to the contrary is based upon their contention that Collom used the name in connection with his own business prior to becoming a sales representative of the plaintiffs and this prior use was a sufficient appropriation to protect defendants in their present use as against the claims of plaintiffs.

It is at least doubtful that Collom made any use of the name except in connection with his representation of the plaintiffs. This was certainly true with reference to the period in which he was operating under the successive franchise agreements. And the isolated instances in which Collom may have employed the name in the period immediately prior to May of 1949 were, as previously indicated, most certainly made on behalf of "Progressive Welder" products and on behalf of the supplier from whom he expected to obtain a sales territory. Collom was well aware of the Welder Company long prior to 1949 and had in fact been employed by that company at one time. Nor does the bare fact that he adopted the business designation prior to the execution of a formal contract alter the situation since it was obviously done with the consent of the Welder Company. Societe Anonyme Du Filtre v. Pasteur Chamberland Co., D.C.S.D.Ohio, 1918, 8 Trade-Mark Reporter 298.

Even if it be assumed that the casual and intermittent use of the assumed name by Collom prior to May of 1949 was solely in connection with his own business, it is apparent that defendants do not contend such use generated a secondary meaning; nor is there evidence here to support any such contention. Such use was not in any event a protectible appropriation. Cf. C. A. Briggs Co. v. National Wafer Co., 215 Mass. 100, 102 N.E. 87.

No continuing right to the use of the name arose out of its use by Collom as an incident of the sales franchises which he held from plaintiffs, and the failure of such agreements to make specific provision as to the continued use of the name upon expiration of the franchises will not prevent the court from protecting the true owner of the name and the good will represented thereby if continued use has resulted in or may reasonably be expected to result in deception among the trade. Morand Bros. v. Chippewa Springs Corp., 7 Cir., 2 F.2d 237; J. F. Rowley Co. v. Rowley, 3 Cir., 18 F.2d 700; Lawrence-Williams Co. v. Societe Enfants Gombault Et Cie, 6 Cir., 22 F.2d 512; U. S. Ozone Company v. U. S. Ozone Company of America, 7 Cir., 62 F.2d 881; Societe Anonyme Du Fil-

tre v. Pasteur Chamberland Co., D.C.S.D. Ohio 1918, 8 Trade-Mark Reporter 298; A. I. M. Percolating Corp. v. Ferrodine Chem. Corp., 139 Va. 366, 124 S.E. 442.

Defendants contend there is no confusion or possibility of confusion because the defendants' name is differentiated from that of plaintiffs by the addition of the words "of Minnesota", that the parties' respective places of business are widely separated, and inasmuch as most purchases of welding equipment involve substantial sums and sales are made to industrial firms who are more sophisticated with reference to their purchases than the ordinary buyer there is no deception as to the business firm with which such purchasers deal.

Plaintiffs concede that such purchasers are not deceived as to the company with which they deal but insist that the relevant confusion is not with respect to the physical identity of the respective businesses of the parties but a confusion as to the connection or relationship between the parties and correspondingly as to the line of goods handled by the defendants. In this connection they contend purchasers will be wrongfully led to believe that defendants operate a branch or subsidiary of the plaintiff companies. See Colorado Nat. Co. v. Colorado Nat. Bank, 95 Colo. 386, 36 P.2d 454; Vickers, Inc. v. Fallon, D.C.E.D.Mich., 48 F.Supp. 221. Such situation may not only make possible the "palming off" of goods in the narrow meaning of the phrase but in addition it is apparent that even without that result the plaintiffs having no control over the business methods and operation of the defendants may suffer injury to its good will arising out of such methods of operation. Cf. Time Incorporated v. Life Television Corporation, D.C. Minn., 123 F.Supp. 470.

■ Where the similarity of trade names or marks is such as to make confusion a doubtful question, the existence of an intent to trade upon the good will of another may be sufficient in itself to establish the likelihood of confusion without proof of specific instances of confusion. G. H. Mumm Champagne v. Eastern Wine Corp., 2 Cir., 142 F.2d 499; Time Incorporated v. Life Television Corporation, D.C.Minn., 123 F.Supp. 470.

■ Here the type of printed advertising used by defendants compels the conclusion that defendants in their continued use of the term "Progressive Welder" were motivated not by a desire to exploit any independent good will of their own but primarily intended to trade upon the good will of these plaintiffs. This is shown not only by the simulation of the type face and coloring employed in plaintiffs' letterhead but also by the very wording of the announcement card. Reference to the expansion of "our Minneapolis facilities" was quite evidently intended to lead customers or prospective customers to believe the plaintiffs had a branch or affiliate in Minneapolis or that defendants were an authorized dealer. This demonstration of intent is sufficient in itself to justify the court's adoption of the defendants' own apparent estimate of the possibility of confusion arising out of their continued use of the name.

But the conclusion need not rest on that basis alone for the evidence demonstrates at least two instances of actual confusion on the part of customers. In both cases, that of Vendo Company and of Engineered Specialties, Inc., the purchasers were led to believe that in dealing with the defendants they were dealing with an authorized dealer or branch office.

Howard Clothes, Inc., v. Howard Clothes Corp., supra, is not conclusive that the addition of the words "of Minnesota" is sufficient to so differentiate the parties as to obviate possibility of confusion. The relief granted in that case was strictly restricted because of the clear showing that defendant was in complete good faith. Furthermore that case did not hold that such a difference in names would compel a conclusion that there was no reasonable possibility of confusion but only that the trial court's finding to that effect was not clearly erroneous.

314

The question of the scope of relief was not made an issue here but it appears that relief may be granted prohibiting the use by defendants of the words "Progressive Welder" both in their business name and in their advertising. The fact that the defendant corporation holds a charter from the State of Minnesota does not prevent allowance of the relief requested. U. S. Ozone Company v. U. S. Ozone Company of America, 7 Cir., 62 F.2d 881.

Defendant Collom's counter-claim for commissions allegedly earned upon goods sold on behalf of plaintiffs prior to December 31, 1952 was admitted by plaintiffs' reply to be a proper claim in the amount of $814.30. No evidence was introduced by Collom to support a recovery in a larger amount. Accordingly Collom is entitled to judgment against both plaintiffs in the amount indicated.

Proposed findings of fact, conclusions of law and order for judgment in accordance with this opinion may be prepared and submitted, together with a proposed form of order of injunction in accordance with the prayer for relief contained in the complaint.