Present: All the Justices

SOUTHERN CHRISTIAN LEADERSHIP
CONFERENCE, VIRGINIA STATE UNIT, INC.

v. Record No. 041941     OPINION BY JUSTICE DONALD W. LEMONS
                              June 9, 2005

ANDREW SHANNON, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Edward L. Hubbard, Judge

This appeal involves a dispute between two organizations, each of which claims entitlement to the name and service mark, "Southern Christian Leadership Conference" ("SCLC") or some version thereof.[1] In this appeal, we consider whether the trial court erred in its judgment that the appellees had a common law right to the name and various service marks superior to that of appellants. For the reasons discussed below, we will affirm the judgment of the trial court.

I. Facts and Proceedings Below

Founded by Dr. Martin Luther King, Jr., and incorporated in the State of Georgia, the Southern Christian Leadership Conference ("Georgia SCLC"), appellees herein, formed and began operating the Virginia State Unit of the Southern

---

[1] This opinion addresses two cases that were consolidated by the chancellor below for purposes of his final decree. The first was styled Southern Christian Leadership Conference, Virginia State Unit, Inc., a Domestic Virginia Corporation v. Andrew Shannon, et al., Chancery No. 37884-EH. The second was styled Southern Christian Leadership Conference, a Georgia Corporation v. Southern Christian Leadership Conference, a Domestic Virginia Corporation, Chancery No. 38254-A-02.

1

Christian Leadership Conference ("Virginia SCLC") as an affiliate of the Georgia SCLC in 1960. Virginia SCLC operated in Virginia as an unincorporated association. Prior to the dispute described herein, Georgia SCLC did not obtain a certificate of authority to transact business pursuant to Code §§ 13.1-757 and -759 (or their predecessors), and did not file a fictitious name certificate pursuant to Code § 59.1-69 (or its predecessor). While Georgia SCLC never registered its marks with the State Corporation Commission, it is undisputed that since 1960 the Virginia SCLC, as the affiliate of the Georgia SCLC, continuously used the service marks of the Georgia SCLC in Virginia.

A dispute arose between various members of the Georgia SCLC and the Virginia SCLC, and a new organization was formed on or about October 18, 2000. This new organization incorporated in Virginia as the "Southern Christian Leadership Conference, Virginia State Unit, Inc.," and used the service marks of the Georgia SCLC and its affiliate, the Virginia SCLC, as its own. For convenience, it shall be referred to hereinafter as "Breakaway SCLC."

Breakaway SCLC filed articles of incorporation with the State Corporation Commission and received a charter on October 19, 2000. It also filed a fictitious name certificate on May 8, 2002. Pursuant to Code § 59.1-92.6, it registered various

2

Georgia SCLC and Virginia SCLC service marks as its own between October 30 and November 5, 2002.[2] Georgia SCLC then obtained a certificate of authority to transact business pursuant to Code § 13.1-757 on December 13, 2002, and filed a fictitious name certificate on September 2, 2003. The Georgia SCLC, and the Virginia SCLC as its affiliate, continued to use its service marks in Virginia despite the fact that Breakaway SCLC registered them as its own.

On August 4, 2003, Breakaway SCLC filed a bill of complaint against Andrew Shannon, in his capacity as agent for the Virginia SCLC, and the Georgia SCLC, claiming a superior right to the now-contested service marks based on its registration of them with the State Corporation Commission. Breakaway SCLC sought temporary and permanent injunctions and an accounting. The trial court issued a temporary injunction and referred the case to a commissioner in chancery.

The commissioner held a hearing on the matter and issued his report on December 8, 2003. The commissioner concluded that Georgia SCLC "has established a common law right to use the service mark . . . by using and continuing to use this name or some variation thereof since 1960" and "that a

---

[2] These included: "SCLC Virginia State Unit, Inc."; "The S.C.L.C."; "The S.C.L.C. of Virginia"; "The SCLC"; "The SCLC of Virginia"; "The SCLC, Virginia State Unit"; "Southern Christian Leadership Conference"; "The Virginia State Unit S.C.L.C."; and "The Virginia State Unit SCLC."

3

subsequent user of the mark, who registers that mark . . . would not prevail or defeat the common law right."  The commissioner recommended against the permanent injunction requested by Breakaway SCLC and recommended dissolution of the temporary injunction in effect.

The trial court confirmed the commissioner's report on May 20, 2004 holding that the dispute was controlled by the Virginia Trademark and Service Mark Act (1998) ("VTSMA"), Code §§ 59.1-92.1 through 92.21.  The trial court framed the issue as whether Breakaway SCLC "has the superior claim to the use of the name, Southern Christian Leadership Conference[,] either as a result of its incorporation of the name in 2000 or its registration of same in 2002 or as a result of some common law right regarding usage."  The trial court ruled against Breakaway SCLC and held that Georgia SCLC, and its affiliate the Virginia SCLC, had superior rights to the contested service marks based on their prior and continuous use, and dissolved the temporary injunction.

Breakaway SCLC noted its objections and filed a timely petition for appeal, which we granted.  For purposes of this appeal, a written statement of facts, pursuant to Rule 5:11(c), was filed in lieu of a transcript.  The chancellor incorporated the commissioner's report into this statement of facts.

## II. Analysis

The standard of review is well settled. "A finding of the chancellor on conflicting evidence, heard ore tenus, carries the same weight as a jury's verdict and will not be disturbed on appeal unless it is plainly wrong or without evidence to support it." Willis v. Magette, 254 Va. 198, 201, 491 S.E.2d 735, 736 (1997) (citations omitted); see also Nelson v. Davis, 262 Va. 230, 234, 546 S.E.2d 712, 715 (2001).

In its first assignment of error, Breakaway SCLC contends the trial court erred in determining that Georgia SCLC had a "common law right" to the marks in question "despite the fact that [Georgia SCLC] had not properly registered its name with the State Corporation Commission or filed Fictitious Name Certificates with any Virginia Circuit Court." Citing Zysk v. Zysk, 239 Va. 32, 404 S.E.2d 721 (1990), and Martin v. Ziherl, 269 Va. 35, 607 S.E.2d 367 (2005), Breakaway SCLC maintains that Georgia SCLC's lack of registration constitutes "wrongdoing" and that Virginia law "will not allow a wrongdoer to profit from its wrongful acts."

In its second assignment of error, Breakaway SCLC maintains the "trial court erred in finding that the Georgia SCLC had a 'superior right' to use the [marks] in question" because Breakaway SCLC was the first to "lawfully" do business in the Commonwealth and was the first to register the marks in

5

Virginia in compliance with Virginia law.  It argues the trial court was "not empowered to reverse the State Corporation Commission's grant of service marks" to Breakaway SCLC.

Nowhere in its brief or in its oral argument before the Court did Breakaway SCLC challenge the trial court's factual finding that Georgia SCLC, through its affiliate Virginia SCLC, continuously used the contested marks in Virginia since 1960.  Additionally, Breakaway SCLC concedes this prior and continuous use in its brief.  In essence, Breakaway SCLC argues that Georgia SCLC's lack of compliance with Virginia law divested it of any claim upon the contested marks and that Breakaway SCLC's registration gave it priority.  Stated another way, the only issues before the Court are whether the registration requirements of the VTSMA supersede or alter the common law rules governing trademarks and service marks and whether a failure to obtain a certificate of authority to transact business in Virginia or file a fictitious name certificate precludes Georgia SCLC and Virginia SCLC from enforcing their common law rights.

It is axiomatic that use, not registration, gives priority to trademark and service mark rights at common law. Stutzman v. C. A. Nash & Son, Inc., 189 Va. 438, 446, 53 S.E.2d 45, 49 (1949); A. I. M. Percolating Corp. v. Ferrodine

<u>Chemical Corp.</u>, 139 Va. 366, 377, 124 S.E. 442, 446 (1924).
This remains so even after the enactment of the VTSMA.

The VTSMA provides for the registration and protection of trademarks and service marks. Upon compliance with the registration requirements, the State Corporation Commission issues a certificate of registration. This certificate of registration

> shall be prima facie evidence of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark within the Commonwealth on or in connection with the goods or services specified in the certificate, and shall be admissible in evidence as competent and sufficient proof of the registration of such mark in any actions or judicial proceedings in any court of this Commonwealth.

Code § 59.1-92.6. However, while the VTSMA creates a rebuttable presumption of ownership based upon registration, the General Assembly clearly stated that nothing in the VTSMA "shall adversely affect the rights or the enforcement of common-law rights in marks." Code § 59.1-92.15.

Furthermore, it is clear from the plain meaning of the definitions given by the General Assembly that the VTSMA recognizes the common law rule of use. A "mark" is "any trademark or service mark entitled to registration under this chapter, whether registered or not." Code § 59.1-92.2. A "service mark" is "any word, name, symbol, or device or any combination thereof <u>used</u> by a person to identify and

7

distinguish the services of such person from the services of others."  Id. (emphasis added).  A "trademark" is "any word, name, symbol, or device or any combination thereof used by a person to identify and distinguish the goods of such person from those manufactured or sold by others."  Id. (emphasis added).  The VTSMA also will not allow a mark to be registered if it "so resembles a . . . service mark or trade name previously used in this Commonwealth by another and not abandoned, as to be likely, when used on or in connection with the goods or services of the applicant, to cause confusion or mistake, or to deceive."  Code § 59.1-92.3(6) (emphasis added).

Thus, the law of Virginia is clear that use, not registration, gives priority to trademark and service mark rights; registration merely serves as evidence of ownership, but this evidence may be rebutted.  The trial court acknowledged Breakaway SCLC's registration, but determined that the Georgia SCLC, and its affiliate Virginia SCLC, continuously used the contested marks in Virginia since 1960.

It is true that both Georgia SCLC and Virginia SCLC operated in the Commonwealth without proper authority until 2002.  There are certain consequences for transacting business in Virginia without authority.  Code § 13.1-758 clearly provides penalties for that conduct, but it further states,

"the failure of a foreign corporation to obtain a certificate of authority does not impair the validity of its corporate acts or prevent it from defending any proceeding in this Commonwealth." Code § 13.1-758(E). Additionally, this suit was brought by Breakaway SCLC in an attempt to deprive the Georgia SCLC and Virginia SCLC of their common law service mark rights. The Georgia SCLC and Virginia SCLC merely defended themselves, as they are permitted to do pursuant to Code § 13.1-758(E). Further, doing business in Virginia without a certificate of authority does not abrogate common law rights to trademarks or service marks. See Code § 13.1-758.

There is no support in the Code or our case law for Breakaway SCLC's argument that the Georgia SCLC's and Virginia SCLC's corporate "wrongdoing" deprives them of rights in their service marks. Breakaway SCLC's reliance on Zysk and Ziherl is misplaced. In Ziherl, we adhered to the rule that "a party who consents to and participates in an immoral and illegal act cannot recover damages from other participants for the consequence of that act." 269 Va. at 43, 607 S.E.2d at 371 (citations omitted). This case, however, does not involve an immoral situation analogous to the factual circumstances presented in Zysk or Ziherl that would invoke the public policy-based proscription discussed in those two cases.

Finally, with respect to Breakaway SCLC's argument that the trial court was "not empowered to reverse the State Corporation Commission's grant of service marks," the final decree of the trial court made no finding pursuant to Code § 59.1-92.10 regarding cancellation of Breakaway SCLC's registration nor did it contain any language that directed reversal of the registration. The trial court merely determined that the Georgia SCLC possessed the "superior claim" and that "hence, the only valid use of the [mark] and its several variations would lie now with an organization sanctioned by the [Georgia SCLC]."

## III. Conclusion

The General Assembly has clearly indicated its adherence to the common law rule of continuous use to determine ownership of trademarks and service marks. The trial court's judgment that Georgia SCLC and Virginia SCLC continuously used the contested service marks since 1960 and that Breakaway SCLC's registration did not defeat the common law right arising from such use was not plainly wrong or without evidence to support it. The judgment of the trial court will be affirmed.

<u>Affirmed</u>.

10